UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES, IN THEIR
CAPACITIES AS TRUSTEES OF THE
LABORERS HEALTH AND WELFARE
TRUST FUND FOR NORTHERN
CALIFORNIA, et al.,

        Plaintiffs,

    v.

GEMINIS DEMOLITION &
CONSTRUCTION, INC.,

        Defendant.

Case No.  22-cv-01438-JSC

**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

Re: Dkt. No. 11

Plaintiffs, several employee benefit plans and their trustees, allege Defendant Geminis Demolition & Construction, Inc. ("Defendant") breached their Trust Agreement by failing to comply with Plaintiffs' audit request, as required by the Agreement. (Dkt. No. 11 at 8.)[1] Plaintiffs allege that Defendant further breached the Agreement by failing to make proper contributions to the Trust Funds. (*Id.*) Plaintiffs' motion for default judgment requesting an injunction ordering an audit, liquidated damages, interest, unpaid contributions, and attorneys' fees and costs is now pending before the Court. For the reasons explained below, the Court GRANTS Plaintiffs' motion for default judgment.

## BACKGROUND

### A.  Complaint Allegations

Plaintiffs include employee benefit plans created by a written Trust Agreement under Section 302 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 186, and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    Sections 3, 4 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

2    U.S.C. § 1002, 1003 and 1132. Plaintiffs are Trustees of the Laborers Health and Welfare Trust

3    Fund for Northern California; Laborers Vacation-Holiday Trust Fund for Northern California;

4    Laborers Pension Trust Fund for Northern California; and Laborers Training and Retraining Trust

5    Fund for Northern California, (collectively the "Trust Funds"). (Dkt. No. 1 at 2.) Each Trust Fund

6    is administered by a Board of Trustees, which has the authority to bring an action in the name of

7    the Trust Funds. (*Id*.) Collectively, these parties are all referred to as "Plaintiffs." Defendant is "an

8    employer with within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. §

9    1002(5), 1145, and an employer in an industry affecting commerce within the meaning of Section

10   301 of the LMRA, 29 U.S.C. § 185." (*Id*.)

11          On February 12, 2018, the Northern California District Council of Laborers ("Union") and

12   Defendant entered into The Laborers' Master Agreement for Northern California ("Master

13   Agreement"), effective from July 1, 2018 to June 30, 2023. (*Id*. at 10.) Defendant became bound

14   to the Master Agreement, which incorporates the Trust Agreements establishing each of the Trust

15   Funds, by signing a Memorandum of Agreement ("MOA") and a Letter of Understanding

16   ("LOU") with the Union. (Dkt. No. 1 at 3.) Collectively, the Master Agreement, MOA, LOU, and

17   Trust Agreements are referred to as the "Agreements." The Agreements required Defendant to pay

18   Plaintiffs the hourly amounts stipulated for each hour paid for or worked by any of Plaintiffs'

19   employees that performed work covered under the Agreements. (Dkt. No. 11-2 ¶ 7.)

20          Additionally, the Trust Agreements require prompt payment of employer contributions to

21   the Trust Funds, payments for liquidated damages in case of employer breach, interest payments

22   on delinquent contributions, attorneys' fees, and collection costs. (*Id*. ¶¶ 12-13.) The Trust

23   Agreements also allow Plaintiffs to audit the signatory employer's books and records to determine

24   whether all benefit contributions have been paid. (*Id*. ¶ 11.) Defendant has never given notice, as

25   required under the Agreements, to terminate the Agreement; therefore it continues in full effect.

26   (*Id*. ¶ 8.)

27          On January 25, 2021, Plaintiffs requested an audit for the period of January 2019 to the last

28   completed quarter to determine whether Defendant paid all contributions owed to the Trust Funds.

(Dkt. No. 1 at 75.) More than 10 months later, Plaintiffs contacted Defendant again to warn that the matter would be referred to Plaintiffs' counsel if Defendant did not contact Plaintiffs' auditor within 10 business days. (*Id.* at 77.) Defendant failed to submit contributions reports and applicable pay contributions for the period of January 2019 to the last completed quarter and books and records for compliance with the audit. (*Id.* at 4.)

Defendant also failed to make on-time payments for the period of January 2021, February 2021, and April through June 2021, resulting in $750 in liquidated damages and $195.18 in interest. (Dkt. 11-2 at 204.) Defendant failed to make any contributions for the months of July 2021 through December 2021, resulting in $900 unpaid contributions. (*Id.* at 205.) Plaintiffs seek an injunction ordering Defendant to submit to an audit of its books and records, pursuant to the Trust Agreements, for the time period of January 2019 to present and to pay any contributions found due as a result of the audit. (Dkt. No. 11 at 9.) They also demand $1,845.18 in liquated damages, interest, and unpaid contributions and a total of $4,983.15 in attorneys' fees and costs. (*Id.*)

### B.  Procedural Background

Plaintiffs filed suit on March 7, 2022. (Dkt. No. 11 at 9.) Defendant failed to answer the Complaint and, at Plaintiffs' request, the Clerk entered default on April 13, 2022. (Dkt. No. 10.) Plaintiffs subsequently filed the now pending motion for default judgment. (Dkt. No. 11.)

### DISCUSSION

### A.  Jurisdiction

The Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties" when considering whether to enter a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has federal question subject matter jurisdiction since Plaintiffs bring suit pursuant to ERISA. *See* 28 U.S. Code § 1331.

The Court also has personal jurisdiction over Defendant. A corporation's "place of incorporation and principal place of business are paradigm . . .  bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (cleaned up). Here, the Court has personal jurisdiction over Defendant because Defendant is a California corporation. (Dkt. No. 11-2 ¶ 6.)

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.  Service of Process

The Court must assess whether the party against whom default judgment is sought was properly served with notice of the action. *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008). A corporation may be served by delivering a copy of the summons and complaint in accordance with state law where the district court is located. *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). Additionally, California law states that a corporation may be served by serving "the person designated as agent for service of process." Cal. Civ. Proc. Code § 416.10(a).

Here, Plaintiffs hired a professional process server to serve Defendant with the Complaint and Summons. (Dkt. No. 6.) The Proof of Service states that on March 14, 2022, the Complaint and Summons was served on Octavio Correa, who is designated by law to accept service of process on Defendant's behalf. (*Id*.) Thus, Plaintiffs adequately executed service of process on Defendant.

### C.  Default Judgment

After entry of default, a court may grant default judgment on the merits of the case. Fed. R. Civ. P. 55. Upon entry of default, the complaint's factual allegations related to liability are accepted as true and deemed admitted by the non-moving party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 728 F.2d 1470, 1471-72 (9th Cir. 1986). The majority of the *Eitel* factors support default judgment.

### i.    Likelihood of Prejudice to Plaintiffs

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if the Court does not grant default judgment. *Eitel*, 782 F.2d at 1471. Prejudice exists where denying the requested default judgment would leave the plaintiff without a recourse for recovery. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, if the Court denied the motion for default judgment, Plaintiffs would likely be left without an alternative means of recovering damages because Defendant failed to appear or defend this action in any way. (Dkt. No. 11 at 6-7.) Thus, the first factor weighs in favor of default judgment.

### ii.    Merit of Plaintiffs' Substantive Claims/Sufficiency of the Complaint

Courts frequently analyze the second and third *Eitel* factors together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). These factors consider whether the facts as pleaded in the complaint address the merits and sufficiency of the plaintiff's claims. *Eitel*, 782 F.2d at 1471. In analyzing these *Eitel* factors, the Court accepts as true all well-pled allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Here, Plaintiffs assert claims under ERISA § 515, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Therefore, Plaintiffs must sufficiently plead that "(i) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (ii) the collective bargaining agreement obligated Defendant to make contributions; and (iii) Defendant did not make the required contributions." *Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Breneman, Inc.*, No. 17-cv-05172-EDL, 2018 WL 5099250, at *4 (N.D. Cal. Aug. 15, 2018).

Here, Plaintiffs allege that the Trust Funds are employment benefit plans under 29 U.S.C. § 1002(37), Defendant was obligated under the Master Agreement and Trust Agreement to pay contributions to the Trust Funds, and Defendant failed to do so. (Dkt. No. 1 at 2, 10; Dkt. No. 11 at 7.) This is sufficient to state a claim under ERISA § 515. As a result, the second and third factors also weigh in favor of default judgment.

### iii.    Sum of Money at Stake

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Under the fourth *Eitel* factor, courts should consider "the amount of money at stake in

2  relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.

3  Default judgment is discouraged when the money at stake is substantial. *Bd. of Trs. v. Core*

4  *Concrete Constr., Inc.*, No. 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012).

5  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant,

6  default judgment may be appropriate." *Id.* (cleaned up). Courts consider the plaintiff's

7  "declarations, calculations, and other documentation of damages" to determine whether the

8  amount of money at stake is reasonable. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–

9  03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

10    Here, Plaintiffs seek a judgment in the amount of $1,845.18 for liquated damages, interest,

11  and unpaid contributions. (Dkt. No. 11 at 9.) They also seek $4,445.00 in attorneys' fees and

12  $538.15 in costs related to the matter. (*Id.*) The amount requested, while not nominal, is not as

13  much as other ERISA cases in which default judgment was granted. *See, e.g.*, *Bd. of Trs. of*

14  *Laborers Health & Welfare Tr. Fund for N. Cal. v. Cal-Kirk Landscaping, Inc.*, No. C–08–3292

15  EMC, 2012 WL 5869619, at *5 (N.D. Cal. Nov. 19, 2012) (awarding $230,1130.27 in damages

16  and $434,853.63 in attorneys' fees and costs). Thus, the fourth factor weighs in favor of default

17  judgment.

18    **iv.    Possibility of Dispute Regarding Material Facts**

19    The fifth *Eitel* factor reviews the possibility of material facts being in dispute. *Eitel*, 782

20  F.2d at 1471-72. Here, Plaintiffs notified Defendant prior to filing the Complaint that the matter

21  would be referred to Plaintiffs' counsel if Defendant did not contact Plaintiffs' auditor. (Dkt. No. 1

22  at 77.) Additionally, Plaintiffs properly served Defendant with the Complaint and Summons. (Dkt.

23  No. 6.) Therefore, it is unlikely that there is a dispute as to the material facts and thus this factor

24  weighs in favor of default judgment.

25    **v.    Excusable Neglect**

26    The sixth *Eitel* factor considers whether a defendant's default is a result of excusable

27  neglect. *Eitel*, 782 F.2d at 1471-72. "This factor favors default judgment when the defendant has

28  been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012); *see Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (noting that default cannot be attributed to excusable neglect after proper service). Here, Defendant's default was not likely due to excusable neglect because Plaintiffs properly served Defendant with the Summons and Complaint, but Defendant failed to respond. (Dkt. No. 6.) Moreover, Defendant was later served with Plaintiffs' Request for an Entry of Default, but Defendant did not respond. (Dkt. No. 9-2.) Therefore, the sixth factor weighs in favor of default.

### vi.  Policy Favoring a Decision on the Merits

The final *Eitel* factor typically weighs against default judgment because it favors a decision on the merits. *Eitel*, 782 F.2d at 1472. However, the "existence of [Rule] 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo,* 238 F. Supp. 2d at 1177 (cleaned up). When a defendant fails to answer the complaint it "makes a decision on the merits impractical, if not impossible." *Id.* at 1178. Here, given Defendant's failure to respond, a decision on the merits is impossible.

Taking all the *Eitel* factors into consideration, the factors weigh in favor of default judgment.

### D.  Relief Sought

Having determined that the motion for default should be granted, the Court must move to the relief to which Plaintiffs are entitled. The scope of relief is limited only by Federal Rule of Civil Procedure 54(c), which mandates that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Since the Court does not assume the truth of any factual allegations related to damages in assessing the appropriate amount, Plaintiffs are required to prove all damages sought in the Complaint. Fed. R. Civ. P. 55(b); *see also TeleVideo Sys.*, 826 F.2d at 917-18 (stating that the general rule of law is that all factual allegations except the amount of damages are taken as true on default judgment).

Under ERISA, an employee benefit plan that obtains judgment in its favor in an action under 29 U.S.C. § 1132 is entitled to the following relief: (1) unpaid contributions; (2) liquidated

damages not in excess of 20% of the unpaid contributions; (3) interest on the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) other legal or equitable relief in the discretion of the court. *See* 29 U.S.C. § 1132(g)(2) (stating that the court "shall award" these types of relief). Here, Plaintiffs request all five forms of relief under 29 U.S.C. § 1132. (Dkt. No. 11 at 9.)

### i.      Damages

Plaintiffs seek to recover $750 in liquated damages for late-paid contributions for the months of January 2021, February 2021, and April through June 2021 and $900 in unpaid contributions for the months of July 2021 through December 2021 for a total of $1,650. (Dkt. 11-2 at 203, 204.) To date, Defendant has failed to report or pay fringe benefit contributions to the Trust Funds for the hours worked by employees doing work covered by the Agreements for the period of July 2021 through December 2021. (*Id.* ¶ 17.) Moreover, "[w]hen contributions are not paid, or not paid timely, liquidated damages are assessed at a flat fee of $150.00 per month, along with simple interest of 1.5% per month on all unpaid contributions." (Dkt. 11-2 ¶ 12.) Therefore, Plaintiffs also seek $195.18 in interest incurred for the months of April 2021 through June 2021. (Dkt. 11-2 at 203.) Thus, the evidence supports the damages amount for late-paid contributions, unpaid contributions, and interest for the time period of January 2021, February 2021, April through June 2021, and July 2021 through December 2021.

ERISA requires an award of liquidated damages if "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). Here, those requirements are satisfied. First, if this order is adopted, then Plaintiffs will have obtained a judgment in their favor. Second, as stated in the Complaint, there are outstanding unpaid contributions at the time of suit. (Dkt. No. 1 at 5.) Third, the Trust Agreement states that liquidated damages are assessed at a flat fee of $150.00 per month for contributions not paid or untimely paid with interest of 1.5% per month. (Dkt. No. 11-2 ¶ 12.) Accordingly, the Court grants Plaintiffs' request for $750 in liquidated damages for late-paid contributions, $900 in unpaid contributions, and $195.18 in interest.

### ii.     Injunctive Relief

United States District Court
Northern District of California

1    Plaintiffs request an injunction ordering Defendant "to submit to an audit of their books

2    and records for the period of January 2019 to date, as required by the agreements to which it is

3    bound." (Dkt. No. 11 at 9.) "The Ninth Circuit has held that when the trust agreement terms allow

4    for such an audit, the court may compel the audit specified in the trust agreement terms." *Bd. of*

5    *Trustees of IBEW Local Union No. 100 Pension Tr. Fund v. Porges*, No. 1:11–cv–02048–LJO–

6    SKO, 2013 WL 4012009, at *9 (E.D. Cal. Aug. 6, 2013). Here, the trust agreement terms allow

7    for Plaintiffs to conduct an audit. (Dkt. No. 1 at 4.) Thus, the Court grants Plaintiffs' request for an

8    injunction.

9    Additionally, Plaintiffs request damages for unpaid contributions and interest that they

10   may discover after conducting the audit for the period of January 2019 to date. (Dkt. No. 11 at 9.)

11   The Court can allow Plaintiffs to file a supplemental declaration requesting damages once the

12   audit is conducted. *See Operating Engineers Health & Welfare Tr. Fund for N. Cal. v. Osmun*

13   *Constr., Inc*., No. 20-CV-02332-JSC, 2020 WL 13094014, at *6 (N.D. Cal. Nov. 16, 2020); *see*

14   *also Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Garfias*, No. C 09-3801 JSW (JL),

15   2010 WL 11575442, at *7 (N.D. Cal. Apr. 26, 2010) (recommending granting default judgment

16   requesting an audit and ordering plaintiffs to submit a supplemental declaration regarding damages

17   after the audit was completed). "The declaration shall include a detailed breakdown of the

18   amounts Plaintiffs seek with regard to: unpaid or delinquent contributions; interest on unpaid

19   contributions; liquidated damages; and reasonable attorneys' fees and costs." *Osmun Constr., Inc*.,

20   No. 20-CV-02332-JSC, 2020 WL 13094014, at *7. Thus, the Court allows Plaintiffs to file a

21   detailed supplemental declaration once Plaintiffs ascertain the existence and amounts, if any, of

22   unpaid contributions from the audit for the period of January 2019 to date.

23   Plaintiffs have asked the Court to retain jurisdiction to ensure payment of additional

24   delinquent amounts uncovered by the audit. (Dkt. 11 at 14.) "In ERISA cases, a court may retain

25   jurisdiction to adjust the damages award based on the results of the audit." *Bd. of Trustees v. KMA*

26   *Concrete Const. Co.*, No. C-10-05774 JCS, 2011 WL 7446345, at *6 (N.D. Cal. Dec. 20, 2011);

27   *see Walters v. Shaw/Guehgnemann Corp*., 2004 WL 1465721, at * 3 (N.D. Cal.) (entering default

28   judgment that awarded damages and also compelled defendant to submit to an audit while

1   retaining jurisdiction to amend the judgment upon a proper showing by plaintiff following audit).

2   Therefore, the Court shall retain jurisdiction to adjust the damage award.

3       ###   iii.     Attorneys' Fees

4       Plaintiffs are also seeking attorneys' fees in the amount of $4,445.00. (Dkt. No. 11 at 9.)

5   Attorneys' fees and costs incurred in an action to recover unpaid contributions and to compel an

6   audit are provided under Section 502(g)(2) of the ERISA. 29 U.S.C. § 1132(g)(2). Federal courts

7   use the lodestar method to determine a reasonable fee award. *Grove v. Wells Fargo Fin. Cal., Inc.*,

8   606 F.3d 577, 582 (9th Cir. 2010). The "lodestar amount" is the number of hours counsel

9   reasonably spent on the litigation multiplied by a reasonable hourly rate. *Id.* In reaching this

10  number, the court "should exclude hours that are excessive, redundant, or otherwise unnecessary."

11  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (cleaned up). A reasonable

12  hourly rate is the prevailing rate in the community for similar work performed by attorneys of

13  "comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

14  979 (9th Cir. 2008). Plaintiffs should provide evidence to the court regarding the number of hours

15  worked and hourly rate of the legal team. *McCown*, 565 F.3d at 1102.

16      Here, Plaintiffs' counsels' rates are $150 per hour for a paralegal, $300 per hour for an

17  attorney, and $350 for a shareholder attorney. (Dkt. No. 11-1 ¶ 5.) The Ninth Circuit has found

18  that rates between $375-$400 were in line with rates charged by ERISA counsel in 2007. *See, e.g.*,

19  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). Thus, given that Plaintiffs'

20  counsels' rates are below this range, they are reasonable.

21      Next, the Court looks at the reasonableness of the hours billed. Here, counsel billed a total

22  of 16.30 hours, which include 3.30 hours worked by paralegal Teresa Rojas Alou, 12.00 hours

23  worked by attorney Craig L. Schechter, and 1.00 hour worked by shareholder attorney Concepción

24  E. Lozano-Batista. (Dkt. No. 11-1 ¶ 5.) The declaration of Craig L. Schechter outlines in detail the

25  tasks performed by each member of the legal team. (*Id*. at 6-7.) "Fees for . . . paralegals are

26  compensable as attorney's fees so long as the work is legal rather than clerical in nature."

27  *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL 7230873, at *7 (N.D. Cal. Dec. 14,

28  2016) (cleaned up).  Paralegal Teresa Rojas Alou spent 3.00 hours reviewing files, gathering

United States District Court
Northern District of California

exhibits, and preparing the Complaint and .30 hours reviewing and revising the Complaint. (Dkt. No. 11-1 at 6.) These tasks are legal rather than clerical and thus compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("[F]iling, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates . . . ."). Therefore, the Court grants attorneys' fees totaling $4,445.00.

Lastly, Plaintiffs request $538.15 for reproduction costs, filing fees, and service of documents on Defendant. (Dkt. 11-1 at 9.) Because these costs are reasonable and both ERISA, 29 U.S.C. § 1132(g)(2), and the Trust Agreements provide for recovery of costs (Dkt. No. 11-2 ¶¶ 12-13), the Court awards Plaintiffs costs in the amount of $538.15.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for default judgment and awards Plaintiffs $1,845.18 in damages, $4,445.00 in attorneys' fees, and $538.15 in costs, for a total judgment of $6,828.33. The Court also GRANTS Plaintiffs' request for injunctive relief compelling Defendant to submit to an audit of its books and records for the period of January 2019 to the present and allow Plaintiffs to file a detailed supplemental declaration regarding any further damages it seeks to collect from Defendants as a result of the audit. The Court will retain jurisdiction pending completion of the audit so that the judgment may be amended, if appropriate, to reflect the correct amount due.

The Court will enter judgment and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:

JACQUELINE SCOTT CORLEY
United States District Judge